# CASES DETERMINED

BY THE

## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS.

### OCTOBER TERM, 1892.

WILLIAM H. FRY *et al.*, Executors of JACOB FRY, Respondents, v. FIELDEN ESTES, Appellant.

St. Louis Court of Appeals, December 13, 1892.

1. **Value of Legal Services:** COMPETENCY OF NON-EXPERT WITNESSES. The value of legal services cannot be established by the opinion of a witness, who is not shown to be an attorney-at-law or in any way qualified to speak on the subject.

2. **Value of Crops and Farming Implements:** EXPERT EVIDENCE. Witnesses, shown to be farmers of many years' experience, are *prima facie* qualified to testify in regard to the value of crops, cattle and farming implements. If, on their cross-examination, it appears that they are not familiar with the value of the grain or cattle, because they had not seen them, or for other reasons, that will not put the trial court in the wrong for admitting their testimony in the first instance.

3. **Damages for Wrongful Attachment:** COUNSEL FEES. In an action for damages for a wrongful attachment, only such counsel fees can be recovered as were incurred in obtaining the dissolution of the attachment. Accordingly it was *held* in this cause, wherein the attachment was dissolved on the hearing of the plea in abatement, that it was erroneous to admit proof of the amount of all the counsel fees in the case.

Fry v. Estes.

4. **Practice, Trial:** GENERAL OBJECTIONS TO EVIDENCE. An objection that evidence is incompetent goes for naught. The trial court is entitled in every instance to be informed of the specific nature of the objection, so as to rule thereon intelligently.

5. **Evidence:** ADMISSIONS IN PLEADINGS. The admissions of a party to the action, made in pleadings in other litigation, are treated herein as competent evidence against such party.

6. **Wrongful Attachment.** EXEMPLARY DAMAGES. An instruction is erroneous, if it authorizes the assessment of exemplary damages, when a party wrongfully suing out a writ of attachment acts without probable cause and is actuated by any hostile, angry, vindictive, mercenary or malicious motives, since, being in the disjunctive, it warrants the assessment of exemplary damages for the existence in such case of merely mercenary motives.

7. **Right of Action for Wrongful Attachment.** An action, not based upon the attachment bond but sounding simply in tort, lies for wrongful attachment in this state, though the suing out of the attachment is not accompanied by malice or the want of probable cause.

8. ———: PLEADING. In such action there is no occasion for a separate count, based upon malice and the want of probable cause, and the joinder of one is, therefore, improper. Where the plaintiff seeks to recover for a malicious attachment, he may allege in one count the wrongful attachment and the existence of malice, and recover such damages as are secured by the attachment bond without proof of malice.

*Appeal from the Pike Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

*Nat. C. Dryden,* for appellant.

*D. A. Ball* and *M. G. Reynolds,* for respondents.

ROMBAUER, P. J.—The action is one to recover damages caused to the testator of the plaintiffs by the wrongful prosecution of a writ of attachment. The petition contains two counts. The first alleges a wrongful prosecution of the writ, the attachment of the decedent's property thereon, the final dissolution of the

attachment, and damages, direct and consequential, arising to the decedent from the attachment in the amount of $2,500. The second count contains a reference to the first, and states that the attachment was sued out maliciously and without any probable cause, and seeks a recovery of damages to the amount of $5,000 for injury to the decedent's feelings, credit and business operations, and legal expenses in defending the suit. There was a verdict for the plaintiffs in the sum of $1,534 on the first count, and in the sum of $500 on the second count, and judgment was entered accordingly.

A large number of errors are assigned, of which we shall notice specially only those hereinafter mentioned. Others, to which the defendant either did not properly except and save his exceptions, or which are not clearly shown by the record, we will notice in a general way so as to prevent their recurrence upon a retrial of the cause.

In the course of the trial the plaintiffs called two witnesses, designated in the record, without giving their first names, as Mr. Blair and Mr. Dempsey. These witnesses were called for the purpose of proving the reasonable value of the services of counsel for the plaintiffs' decedent in the litigation. It was not shown that they were attorneys-at-law, or in any way qualified to speak on the subject. The defendant objected to their evidence, because it did not appear that they had any actual knowledge or expert opinion on the subject. The court overruled the objection and the defendant excepted. This was clearly erroneous. The court may have known that the parties thus called were attorneys-at-law, and, as the question whether they were qualified to give expert testimony was one for the court, may on that ground have admitted their testimony without further proof. But, since that question is subject to

review, we have no means to determine that the court did not err in overruling the defendant's exception, because the witnesses, as far as the record shows, were clearly unqualified to speak on the question. Another objection to all the testimony offered by the plaintiffs, on the subject of counsel fees, is that it was not confined to counsel fees incurred in obtaining a dissolution of the attachment (which alone are recoverable in this action), but that it related to *all counsel fees in the case.* State to use v. McHale, 16 Mo. App. 478, 482, and cases cited. In the case at bar the judgment on the plea in abatement was in favor of the defendant in the attachment suit; hence, the exception mentioned in the *McHale case* is not applicable. This last objection is not properly saved, and we merely notice it as a guide to the trial court upon retrial. Similar errors were committed in admitting evidence of traveling expenses incurred, not by decedent but by others, without showing that such traveling expenses were necessarily incurred in obtaining the dissolution of the attachment.

Champ Clark, an attorney-at-law, was called by the plaintiffs and also gave evidence touching reasonable attorney's fees *in the whole case.* On his further examination he was asked by plaintiffs' counsel whether he had not been consulted by the defendant touching the attachment suit, and what his advice was. · Objection was made to this inquiry, because the communication was privileged. The court properly sustained the objection. Notwithstanding this ruling, counsel for plaintiffs persisted in asking the witness several other questions on the same subject, all of which the court ruled out. There was no error on the part of the court in this matter, but there was misconduct on the part of counsel for the plaintiffs, and its recurrence should be avoided. This conduct became all the more prejudicial

in that the plaintiffs' counsel was permitted in his argument to the jury to comment on the attorney's advice, which had been ruled out. There was no error in permitting the cross-examination of the defendant on this subject. *Weinstein v. Reid*, 25 Mo. App. 41.

Before leaving the question of evidence, we deem it proper to remark that there was no error in permitting the plaintiffs' witnesses to testify as to the value of the crops, cattle and farming implements. The witnesses had *prima facie* qualified themselves to testify on the subjects by showing that they were farmers of many years' experience. If, on their cross-examination, it appeared that they were not familiar with the value of the grain or cattle in question, because they had not seen them, or for other reasons, that fact could not put the court in the wrong for admitting their testimony before such showing was made. The testimony as to farming implements and stock possessed by the decedent in years succeeding the attachment was irrelevant, and should have been excluded. But we must also say in this connection that we cannot put the court in the wrong for disregarding general objections, and that the defendant's objections in most instances were too general to be noticed. An objection that evidence is incompetent goes for naught, although the evidence may be wholly irrelevant. The court is entitled in each instance to be informed of the specific nature of the objection, so as to rule intelligently thereon, and there is no excuse for not making such objection specific in every instance, particularly since the presence of a short-hand reporter at the trial enables parties to do so without any loss of time.

The defendant on the opening of the trial objected to the introduction of any evidence in support of either count of the petition, on the ground that neither stated a cause of action. The court overruled the objection

and the defendant excepted. No error is assigned on this ruling, and we shall notice it hereafter only for the purpose of guiding the court in a retrial of the cause. The defendant also demurred to the evidence by instruction at the close of the plaintiffs' evidence, and now claims that this demurrer should have been sustained, because there is no evidence in the record that the plaintiffs were executors of Jacob Fry. Among the evidence introduced by the plaintiffs were several answers filed by the defendant in former actions between the same parties, containing the admissions that the plaintiffs were such executors; hence, the point now made, that the court should have nonsuited the plaintiffs for this omission in their proof, is not well taken.

The court at plaintiffs' instance gave, among others, the following instruction, which is challenged as erroneous: "On the first count of the petition: If the jury believe from the evidence in the cause that the defendant Estes, on or about the second day of June, 1881, instituted a suit by attachment against deceased, Jacob Fry, and caused to be attached the property mentioned in the first count of plaintiffs' petition, and that at the trial of the plea in abatement, filed by said Jacob Fry, deceased, the verdict of the jury and judgment of the court was in favor of said Jacob Fry, deceased, and against the defendant Estes, dissolving the attachment, and that Jacob Fry is now deceased, and that plaintiffs are the executors of his estate, then your verdict must be for the plaintiffs in such sum as you believe from the evidence in the case the property was worth at the time it was attached, together with six per cent. interest from the time said property was attached, less the sum of $387. 81 paid to plaintiffs in 1890 by the receiver as the net proceeds of the wheat. And you may give such further damages as you may believe the estate of Jacob

Fry has sustained by reason of said attachment suit, including all traveling expenses, together with a reasonable attorney fee as you believe should be allowed from the evidence in the case, not to exceed together the amount claimed in the first count of the petition."

Conceding that the first count did state a cause of action, yet this instruction was erroneous. There is no statement therein on what amount the six per cent. interest was to be allowed, nor what traveling expenses were referred to, and the attorney's fees are not limited to attorney's fees necessarily incurred in obtaining a dissolution of the attachment, but such as the jury may believe should be allowed in the case from the evidence.

Where the court instructs the jury on the *measure of damages*, it must instruct them correctly, because the measure of damages is a question of law. *Kick v. Doerste,* 45 Mo. App. 134, 141, and cases cited.

On the second count of the petition the court gave to the jury, among others, the following instruction which is challenged as erroneous: "If the jury believe from the evidence in the case that the defendant Estes in the said attachment suit was actuated by any hostile, angry, vindictive, mercenary or malicious motive against said Jacob Fry, and that said attachment suit was without probable cause, as defined by the court in a former instruction, then you should find a verdict for the plaintiffs on the second count in their petition."

It will be noticed that this instruction is on the question of malice, and uses the adjectives applicable to the defendant's motives in the disjunctive. Under this instruction the jury were not only warranted but instructed to find malice in the attachment from the fact that the defendant was actuated by a mercenary motive, and acted without probable cause. Since

mercenary is no more than sordid or avaricious, the jury were substantially instructed to find malice from an over anxiety on the part of defendant to collect a debt which he claimed was due, if no probable cause for the attachment existed. Such is not the law. *Grant v. Reinhart*, 33 Mo. App. 74–82.

We must, therefore, conclude that both these instructions were erroneous and prejudicial.

In remanding the case for a new trial we will pass on some propositions raised upon the trial and by the record, although no error is assigned upon them in this court. The defendant at the trial objected to the introduction of any evidence in support of the first count, on the ground that it failed to state any cause of action. When the court overruled this objection, he saved his exception and preserved it by motion for new trial. Although the ruling of the court is not expressly assigned for error in this court, we are bound to decide whether the first count does state a cause of action.

It will be noticed that the first count is not an action upon the attachment bond and does not even allege that an attachment bond was given, although it appeared upon the trial that such bond was given. Nor does the first count allege either malice or the want of probable cause in the prosecution of the attachment, but simply states that the attachment was wrongfully sued out. It is evident, therefore, that the first count states no cause of action at common law, because it shows no liability on the part of the defendant either upon a contract raised by the bond, or an action upon the case at common law,—malice and want of probable cause being essential ingredients of the latter action. Cooley on Torts, 180; Drake on Attachment [7 Ed.] sec. 114; *Lindsay v. Larned*, 17 Mass. 189.

Since the supreme court first decided in *State v. Thomas*, 19 Mo. 613, that, in actions upon an attach-

ment bond, only the natural and proximate damages resulting from the suing out of the attachment could be recovered, and neither injuries to credit nor exemplary damages, it has been the practice to sue upon the bond in one count, and add one count for the malice as at common law in an action on the case. That was the course pursued in *Alexander v. Harrison*, 38 Mo. 258, and in *Grant v. Reinhart*, 33 Mo. App. 74. The cases of *Walser v. Thies*, 56 Mo. 89, and *Scovill v. Glasner*, 79 Mo. 449, were purely proceedings for malicious attachment. No case can be found in this state wherein the plaintiff sued in one count for the wrongful, and in the other for the malicious, attachment of his property, nor is there any reason for adopting that course, since, if an action on the case will lie for a *wrongful* attachment, malice in the attachment merely goes in aggravation of the damages and furnishes no independent cause of action. It has been held on the one hand that a suit for the wrongful suing out of an attachment must be upon the bond. *Abbott v. Whipple*, 4 Greene (Iowa) 320. But it has also been held on the other hand that a person may sue for malicious attachment, and, if he fail in establishing malice, recover actual damages caused to him by the attachment, if it was wrongful. *Kirksey v. Jones*, 7 Ala. 622; *Reed v. Samuels*, 22 Tex. 114; *McLaughlin v. Davis*, 14 Kan. 168. These latter cases seem to rest on the theory that the statute recognizes a liability on the bond for an attachment which is wrongful, even though not malicious, and hence the party aggrieved may either sue in debt on the undertaking, or in case for the wrong. As the question is one which does not substantially affect the right of recovery, but only the form of action, we see no reason why a party in this state may not sue for a wrongful attachment in tort, even though the attachment was not malicious, and, hence, we hold that the

The Drummond Tobacco Co. v. The Tinsley Tobacco Co.

first count of plaintiffs' petition did state a cause of action. At the same time no useful end can be subserved by dividing his action into two counts, as the cause of action in both counts is the same, and, hence, we must hold that the proper course, in cases where the party seeks to recover damages for malicious attachment, is to frame his petition accordingly, and to do it in one count. If he fail in establishing malice, which merely goes in aggravation of damages, he may still recover such damages as he could have recovered in an action upon the bond for the wrongful attachment.

The judgment is reversed and the cause remanded. Judge THOMPSON concurs. Judge BIGGS, having been of counsel, does not participate in the decision.